# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| DARRYL V. GREEN, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CASE NO. 3:17-CV-00537-MGG |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

On July 10, 2017, Plaintiff Darryl V. Green ("Green") filed a complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny his application for disability benefits. Alternatively, Green seeks a remand for further consideration of his application. Green filed his opening brief on this matter on November 22, 2017. On January 3, 2018, the Commissioner of Social Security ("Commissioner") filed a response asking the Court to affirm the decision denying benefits. This matter became ripe on January 17, 2018, when Green filed his reply brief. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## I. PROCEDURE

On May 16, 2013, Green filed a Title II application for disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI"). In both applications, Green alleged disability beginning August 15, 2010. Green's claims

were denied initially on September 20, 2013, and upon reconsideration on March 20, 2014. Upon Green's proper request, a hearing was held on December 3, 2015, before an administrative law judge ("ALJ"). Green and an impartial vocational expert ("VE") appeared and testified at the hearing. On January 28, 2016, the ALJ issued her decision finding that Green was not disabled and thus was not entitled to disability benefits. On May 18, 2017, the Appeals Council denied Green's request for review making the ALJ's decision the final decision of the Commissioner. Green now seeks judicial review of the Commissioner's final decision in this Court pursuant to sentence four of 42 U.S.C. § 405(g).

## II. RELEVANT BACKGROUND

### A. Green's Testimony

Green was born on November 4, 1962, and was 47 years old on the alleged disability onset date. About six months after submitting his disability application, turned 50 years old and shifted from the Social Security category of "younger person" to the category of "person closely approaching advanced age." *Compare* 20 C.F.R. § 404.1563(c) *with* 20 C.F.R. § 404.1563(d)[1]. At a height of 74 inches and a weight of 312 pounds documented in his application, Green has a body mass index of 40.05, which constitutes Level III morbid obesity. *See* SSR 02-1p.

Green has at least a high school education. He worked as a sales representative for an industrial warehouse for several years taking orders at a counter then retrieving

---

[1] Regulations governing applications for DIB are found at 20 C.F.R. Part 404. The regulations for SSI are nearly identical and appear at 20 C.F.R. Part 416. For the sake of economy, this order will only refer to 20 C.F.R. Part 404 even though both parts apply in light of Green's applications for both DIB and SSI.

2

items for customers from the warehouse. He left that job, which required constant standing, because he had developed leg issues that ultimately required vascular surgery and considerable wound care. Green then went to work for a beverage distributor delivering and stacking kegs and cases of beer. Green had been in that job for about six months when he was in an automobile collision on August 15, 2010, that caused injuries preventing him from returning to work.

Green further testified that he lives with his mother. He explained that he experiences chronic pain in his lower back and hips, which prevents him from standing or walking for prolonged periods. Green also stated that he decided on his own to use a cane to relieve some of his discomfort and make him steadier on his feet. Green also indicated that his current pain treatment involves over-the-counter medication and daily ice packs on his back that do not alleviate his symptoms completely. Green reported that he lies down much of the day because sitting and walking causes pain. Green also informed the ALJ that he has not sought further treatment, such as the hip replacement surgery recommended by an orthopedic physician, because of his lack of financial resources. Nevertheless, Green confirmed that he has sought treatment for other assorted issues, including a hernia repair, at a local clinic for low-income individuals.

After hearing Green's testimony, the VE responded to the ALJ's hypotheticals with testimony that a person of Green's functional limitations could not work as a delivery driver as Green had before, but could work in a sales representative position comparable to Green's past work. The VE also reported that a person with the hypothetical residual

functional capacity identified by the ALJ could work as a ticket seller, mailroom clerk, and garment sorter.

B.  **Medical Evidence**

The record before this Court documents Green's assorted medical diagnoses and treatment records. The Court only references here the medical evidence related to Green's physical impairments related to his back and hips because he has only challenged the ALJ's decision with relation to his use of a cane, which does not implicate his shoulder pain or hypertension.

At a consultative examination by Ralph Inabnit, D.O. ("Dr. Inabnit") on August 10, 2013, Green reported numbness in his toes and presented using a cane. Dr. Inabnit's report indicated mild spondylolysis and mild spinal stenosis upon review of an MRI. Dr. Inabnit also found Green's gait, motor skills in the lower extremities, and range of motion in his hips, knees, ankles, and feet to be normal. In summary, Dr. Inabnit explicitly stated that Green was using a cane in his left hand that day; can lift 10 to 15 pounds; is not seeing a specialist to address his pain; and is not engaged in any exercise program. [DE 8 at 431].

In a letter dated August 29, 2013, the Disability Determination Bureau asked Dr. Inabnit to clarify his description of Green's gait and to provide an opinion "as to whether the use of the cane is medically necessary for ambulation." [DE 8 at 434]. Dr. Inabnit replied on September 3, 2013, stating that Green could walk without a cane in his office and opining that a cane was not necessary. [*Id.*].

On November 13, 2014, Green then visited orthopedist Dr. J. Michael Kelbel, M.D. ("Dr. Kelbel") complaining of bilateral hip pain. Dr. Kelbel reported no instability despite

4

Green's hip and thigh pain. [DE 8 at 459]. Upon review of x-rays, Dr. Kelbel diagnosed Green with severe osteoarthritis in his left hip and moderate to moderate severe osteoarthritis in the right hips. Dr. Kelbel prescribed Mobic for pain and concluded that Green will eventually need total hip arthroplasty. Dr. Kelbel's notes do not mention a cane—not even that Green was using a cane at the visit let alone that a cane would be required to address symptoms arising from his osteoarthritis.

### C. The ALJ's Determination

On January 25, 2016, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed by the SSA regulations. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ found that Green had not engaged in substantial gainful activity since August 15, 2010, the alleged onset date. At Step Two, the ALJ found that Green has the following severe impairments: lumbar degenerative disc disease, osteoarthritis of the bilateral hips, chronic right shoulder pain, and obesity. At Step Three, the ALJ determined that Green does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Green retained the residual functional capacity ("RFC") to perform light work[2], except that Green can only lift, carry, push, and pull

---

[2] The Social Security regulations define "light work" as:
> involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work,

5

twenty pounds occasionally and ten pounds frequently. Furthermore, the ALJ found that Green could stand and/or walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday. The ALJ then determined that Green could occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb stairs and ramps but never ladders, ropes, or scaffolds; frequently reach forward, to the side, and overhead using the right upper extremity; can occasionally use foot controls; and must work at a flexible pace and avoid concentrated exposure to extreme cold and wetness. Based on this RFC, the ALJ concluded at Step Four that Green is unable to perform any past relevant work.

At Step Five, the ALJ determined that given his RFC, age, education, and work experience, Green could perform jobs that existed in significant numbers in the national economy, including ticket seller, mailroom clerk, and garment sorter. Accordingly, the ALJ concluded that Green has not been under a disability as of August 15, 2010.

Through the instant appeal, Green contends that the ALJ's RFC of light work with the limitations outlined above is contrary to law and not supported by substantial evidence. Specifically, Green argues that the ALJ failed to properly address his use of a cane. In support, Green asserts that (1) the ALJ improperly based her decision to exclude any limitation for use of a cane on Dr. Inabnit's "outdated" medical opinion issued before Green was diagnosed with hip osteoarthritis; (2) the ALJ failed in her duty to develop the record; and (3) these errors are not harmless as inclusion of a cane restriction in the RFC

---

we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

6

would limit Green to sedentary work, which would eliminate all potential work as of his 50th birthday in 2013.

**III.    STANDARD OF REVIEW**

On judicial review under the Social Security Act, the Court must accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). When an ALJ's decision is the final action of the SSA, the reviewing court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Id.*

It is essential for the ALJ to build a logical bridge from the evidence to the conclusion in reaching her decision. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). However, a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence. *Id.* An ALJ must minimally express his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be certain that the ALJ considered the necessary evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). To accomplish this, however, the ALJ need not specifically address every piece of evidence in the record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The claimant bears the burden of proving that he is disabled pursuant to the Act and regulations. 20 C.F.R. § 404.1512(a).

7

## IV. ANALYSIS

### A. RFC Standard

An RFC is the most activity an individual claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a). An ALJ determines a claimant's RFC by assessing "the extent to which [his or her] medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to perform work-related physical and mental activities." SSR 96-9p. An RFC determination is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities." *Id.* "For the majority of individuals who are age 50 or older and who are limited to the full range of sedentary work by their medical impairments, the rules and guidelines in appendix 2 require a conclusion of 'disabled.'" *Id.*; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2.

### B. Use of Cane

Here, Green argues generally that his RFC should have included a limitation accounting for his use of a cane. Specifically, Green contends that the ALJ's reliance on Dr. Inabnit's September 2013 opinion that a cane was not medically necessary was misplaced given Dr. Kelbel's diagnosis of hip osteoarthritis, a degenerative disorder, over a year later. Green acknowledges that the record lacks any medical evidence establishing that a cane was medically necessary, but argues that such an evidentiary gap–which Green contends is significant and prejudicial—could have been filled had

8

the ALJ taken steps to fulfill her duty to develop the record completely. The Court is not persuaded.

1. **Medically Necessary**

To find that a hand-held assistive device, like a cane, is medically required, an ALJ must rely upon "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Additionally, an ALJ "must always consider the particular facts of a case." *Id.*

Here, the record includes little evidence of any kind discussing Green's need for a cane. As Green admits, the only reference to a cane in his medical records is in Dr. Inabnit's reports from the consultative examination in August 2013. Dr. Kelbel's notes in November 2014 at the time of Green's initial hip osteoarthritis diagnosis say nothing about Green's use of a cane or his need for a cane. In her decision, the ALJ references both of these records. The ALJ also cites a treatment record from December 2015 when Green visited a doctor to address a burn on his back resulting from his falling asleep on an ice pack. That doctor noted that Green appeared "pleasant, well nourished, well developed, [and in] no acute distress." [DE 8 at 478].

Comparing these medical records to Green's own testimony about the severity of his pain, his inability to ambulate without a cane, and his need to lie down most of the day, the ALJ concluded that the medical evidence was inconsistent with Green's reported symptoms. Finding no medical documentation of the need for a cane or for

9

restricting him to less than six hours per day of sitting, standing, or walking, the ALJ defined the RFC without including a cane restriction or a more restrictive limitation on sitting, standing, and walking.

Indeed, Green carries the burden to present evidence to establish his disability, including medical documentation of the medical necessity of a cane. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The record he presented lacked such evidence and documentation. And Plaintiff's testimony alone does not establish disability. 20 C.F.R. § 1529(a).

Therefore, Green's argument that Dr. Inabnit's opinion controlled the ALJ's evaluation of his need for a cane is not persuasive. There is no doubt that the ALJ considered Dr. Inabnit's opinion. However, the ALJ's decision also reflects consideration of a broader range of evidence, not the least of which was Green's own testimony. Furthermore, the ALJ considered medical evidence from a doctor's visit in December 2015, more than a year after Dr. Kelbel's November 2014 osteoarthritis diagnosis. As such, the ALJ did not ignore subsequent evidence related to the need for a cane as Green suggests.

### 2.  Development of the Record

Green's argument that the ALJ should have further developed the record regarding his need for a cane after his osteoarthritis diagnosis is also unpersuasive. As Green cites, it is the responsibility of the Agency to develop a claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant files a disability] application . . . ." 20 C.F.R. § 404.1512(b). Here, Green's disability

applications were filed on May 16, 2013. Therefore, any duty of the ALJ to develop the record further under Section 404.1512(b) extended back to May 2012. Yet Green argues that the ALJ should have developed the record further with regard to cane-related evidence after November 2014, when he was diagnosed with osteoarthritis. As such, 20 C.F.R. § 404.1512(b) is inapplicable here.

Nevertheless, an ALJ has a basic obligation to develop a full and fair record related to social security disability hearings even though claimants retain the burden to establish their disability. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991); *see also* 20 C.F.R. § 404.1512(a). "An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Wilson v. Astrue*, No. 1:11-CV-00471-TWP, 2012 WL 3028023, at *7 (S.D. Ind. July 24, 2012) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2009)).

"This court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather . . . ." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). "Accordingly, a significant omission is usually required before this court will find that the [Commissioner] failed to assist [even] *pro se* claimants in developing the record fully and fairly." *Id.* (quoting *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994). An omission must be prejudicial to be significant enough to justify remand for an ALJ's failure to develop the record. *Nelson v. Apfel,* 131 F.3d 1228, 1235 (7th Cir. 1997). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Nelms*, 553 F.3d at 1098 (quoting *Binion v. Shalala,* 13

11

F.3d 243, 246 (7th Cir. 1994)). "Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Id.* (citations omitted).

Here, Green argues that the record was inadequate to explain any relationship between his hip osteoarthritis diagnosis and his need for a cane. As such, Green contends that the ALJ erred by failing to develop the record further to address that evidentiary gap. The question, however, is whether the lack of evidence related to Green's need for a cane was significant and prejudicial.

Preliminarily, the Court notes that determining whether a record is sufficiently complete is a difficult and elusive task. *Nelms*, 553 F.3d at 1099. Thus, the ALJ deserves considerable deference as to whether the evidence presented by Green—who had a non-attorney representative helping him navigate the disability application process—was sufficient to evaluate his claims. *See id.* Nevertheless, the Court must assess whether the omission of cane-related evidence after Green's osteoarthritis diagnosis was relevant and significant to the ALJ's decision.

In *Smith v. Apfel*, the Seventh Circuit found that the ALJ should have ordered additional evidence regarding the claimant's arthritis of the knee rather than relying upon x-rays performed ten years earlier and nothing more. 231 F.3d 433, 437–38 (7th Cir. 2000). Thus, a 10-year gap in relevant medical evidence was clearly significant and prejudicial. In *Nelms*, the court found that a complete lack of evidence in the record for two years in the middle of the claimant's alleged disability period also constituted a significant omission worthy of remand. 553 F.3d at 1098. Green's record regarding the cane does not approach the significance or importance of either of these scenarios.

12

Admittedly, Green's medical record does not explicitly reference his cane after the osteoarthritis diagnosis. However, there is not even a two-year gap in the record like that in *Nelms*. Green presented medical records that post-date the osteoarthritis diagnosis. The simple fact that those records do not include any reference to his cane does not on its own demonstrate that the record is incomplete. In fact, the lack of any reference to or prescription for the cane is evidence in and of itself regarding the significance of the cane. The ALJ clearly considered that lack of cane-related evidence in determining Green's RFC. Moreover, the ALJ clearly considered the full range of Green's testimony about his symptoms, including his professed need for a cane, in assessing his RFC. And furthermore, Green testified that no doctor had prescribed a cane for him showing that he was actually aware of the lack of cane-related evidence in the record. Yet he chose, with a non-attorney representative assisting him, not to present additional evidence or to seek the ALJ's assistance in developing the record further.

Green also contends that the ALJ prejudicially and improperly used his lack of financial resources and resulting lack of treatment to undermine the credibility of his testimony about his need for a cane. Indeed, an ALJ should not hold a claimant's inability "to afford treatment [or] access . . . free or low-cost medical services" against him. SSR 96-7p[3]; *see also* SSR 82-59. While the ALJ here noted Green's lack of treatment, she also reported Green's hearing testimony where he admitted familiarity and even

---

[3] SSR 96-7p was rescinded and superseded by SSR 16-3p in March 2016. However, the ALJ's October 2015 decision predates SSR 16-3p such that SSR 96-7p remains applicable in this case.

13

treatment for other medical conditions at a local low-cost clinic. Thus, the ALJ's opinion reflects a balancing of multiple factors in assessing Green's credibility. Yet even assuming that the ALJ weighted Green's lack of treatment too heavily, Green still failed to present specific, relevant facts that the ALJ failed to consider. *Nelms*, 553 F.3d at 1098. Therefore, the ALJ's failure to develop the record further on Green's need for a cane is not a significant omission. And the Court will not displace the ALJ's judgment on whether the record before him is complete on Green's speculation that the osteoarthritis diagnosis turned his use of a cane into a medical necessity.

Accordingly, the ALJ's omission of any cane-related limitation in Green's RFC is not legally erroneous and is supported by substantial evidence. Finding no error in the ALJ's decision, the Court need not address Green's arguments that the cane-related errors were not harmless.

## V.  CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's exclusion of any cane-related limitation in Green's RFC and her conclusion that Green is not disabled are not legally erroneous and are supported by substantial evidence. Therefore, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgement in favor of the Commissioner.

**SO ORDERED.**

Dated this 28th day of September 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge